## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name   **NAVARRO**        **MANUEL**              **M.**              F I L E D
      (Last)               (First)              (Initial)

Prisoner Number ____P-94139_____

Institutional Address ____P.O. BOX 705, SOLEDAD, CALIF.____   RICHARD W. WIEKING
                                                 CLERK U.S. DISTRICT COURT
FEB 2 8 2008
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

MANUEL M. NAVARRO
_____
(Enter the full name of plaintiff in this action.)

                 vs.

BEN CURRY, WARDEN
_____

_____

_____

_____
(Enter the full name of respondent(s) or jailor in this action)

Case No. _____
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

Read Comments Carefully Before Filling In

### When and Where to File

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS            - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10 A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11     1.  What sentence are you challenging in this petition?

12         (a)   Name and location of court that imposed sentence (for example; Alameda

13               County Superior Court, Oakland):

14     **ALAMEDA COUNTY SUP. CT.        HAYWARD**

15         Court                          Location

16         (b)   Case number, if known __H31293__

17         (c)   Date and terms of sentence ___JULY 10, 2003/10YEARS___

18         (d)   Are you now in custody serving this term? (Custody means being in jail, on

19               parole or probation, etc.)        Yes __XX__   No _____

20               Where?

21               Name of Institution: __CORRECTIONAL TRAINING FACILITY__

22               Address: __P.O. BOX 705, SOLEDAD, CA. 93960-0705__

23     2.  For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  __451 (b)/451.1 (a)/667.5 (b)__

27  _____

28  _____

3.  Did you have any of the following?

Arraignment:                                    Yes  XX          No _____

Preliminary Hearing:                            Yes  XX          No _____

Motion to Suppress:                             Yes _____        No  XX

4.  How did you plead?

Guilty _____    Not Guilty  XX    Nolo Contendere _____

Any other plea (specify) ____NO____

5.  If you went to trial, what kind of trial did you have?

Jury  XX      Judge alone_____    Judge alone on a transcript _____

6.  Did you testify at your trial?                Yes _____        No XX

7.  Did you have an attorney at the following proceedings:

(a)    Arraignment                              Yes XX          No _____

(b)    Preliminary hearing                      Yes XX          No _____

(c)    Time of plea                             Yes XX          No _____

(d)    Trial                                    Yes XX          No _____

(e)    Sentencing                              Yes XX          No _____

(f)    Appeal                                   Yes XX          No _____

(g)    Other post-conviction proceeding         Yes _____        No  XX

8.  Did you appeal your conviction?              Yes XX          No _____

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                          Yes XX          No _____

Year: 2003        Result: JUDGEMENT AFFIRMED

Supreme Court of California       Yes XX      No _____

Year: 2004        Result: REVIEW DENIED

Any other court                          Yes _____        No XX

Year: _____        Result: I / A

(b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                        Yes _____    No XX

2         (c)    Was there an opinion?                Yes XX      No_____

3         (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                     Yes _____    No XX  (N/A)

5                If you did, give the name of the court and the result:

6                _____

7                _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?        Yes XX     No_____

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16        (a)    If you sought relief in any proceeding other than an appeal, answer the following

17               questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: ALAMEDA COUNTY SUPERIOR COURT

19                Type of Proceeding: HABEAS CORPUS

20                Grounds raised (Be brief but specific):

21          SAME AS THOSE RAISED IN THIS PETITION
              a.

22                b._____

23                c._____

24                d._____

25                Result: DENIED                Date of Result: U/A

26          II.   Name of Court: CALIF. CT. OF APPEAL FIRST APP. DIST.

27                Type of Proceeding: HABEAS CORPUS

28                Grounds raised (Be brief but specific):

SAME AS PREVIOUS PETITIONS

a._____

b._____

c._____

d._____

Result: _DENIED_ Date of Result: _U?A_

III.    Name of Court: ____CALIF. SUPREME COURT____

Type of Proceeding: _HABEAS CORPUS_

Grounds raised (Be brief but specific):

a. _SAME AS PREVIOUS PETITIONS_

b._____

c._____

d._____

Result: _DENIED_ Date of Result: _U/A_

IV.    Name of Court: ____N/A____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____N/A_____ Date of Result: _N/A_

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No _XX_

Name and location of court: ____N/A____

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:_____ PLEASE SEE ATTACHED PETITION _____

6

7  Supporting Facts:_____ PLEASE SEE ATTACHED PETITION _____

8  _____

9  _____

10 _____

11 Claim Two:_____ PLEASE SEE ATTACHED PETITION _____

12 _____

13 Supporting Facts:_____ PLEASE SEE ATTACHED PETITION _____

14 _____

15 _____

16 _____

17 Claim Three:_____ PLEASE SEE ATTACHED PETITION _____

18 _____

19 Supporting Facts:_____ PLEASE SEE ATTACHED PETITION _____

20 _____

21 _____

22 _____

23 If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25 _____ N/A _____

26 _____

27 _____

28 _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3   of these cases:

                PLEASE SEE ATTACHED PETITION

4   _____

5   _____

6   _____

7   Do you have an attorney for this petition?               Yes_____      No XX

8   If you do, give the name and address of your attorney:

9   _____

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on _2/15/08_____          _Manuel M. Navarro_____

14                 Date                     Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 7 -

MANUEL M. NAVARRO
CDCR #P-94139  TD-6L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL M. NAVARRO, ) | Case No._____ |
| ) | |
| Petitioner, ) | PETITION FOR WRIT OF HABEAS |
| ) | CORPUS |
| -vs- ) | 28 U.S.C. § 2254 |
| ) | |
| BEN CURRY, WARDEN, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| _____) | |

COMES NOW, petitioner, **Manuel M. Navarro**, pursuant to

**28 U.S.C. § 2254**, and all other relevant and applicable

(federal) habeas corpus rules, and hereby respectfully prays

for the above entitled court to issue forth immediately,

a writ of habeas corpus, thereby ordering the immediate and

unconditional release of petitioner therefrom further

unconstitutional restraint of his liberty of which such

unconstitutional restraint was caused by various violations

of petitioner's substantial rights to which petitioner

further states as follows:

### I. STANDARD OF REVIEW

Citing **28 U.S.C. § 2254 (a)** and the relevant portion

thereof: ["]The Supreme Court, a justice thereof, a circuit

judge, or a district court shall entertain an application

for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgement of a State Court only on the ground that he is in custody in violation of the [U.S.] Constitution or laws or treaties of the United States.

Pursuant to § 2254 (b)(1), an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a state court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available state corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Federal habeas corpus relief is also not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. **28 U.S.C. § 2254 (d)(1)(2)**; **Ramirez v. Castro**, 365 F.3d 755, 773-775 (9th Cir. 2004). The "contrary to" and "unreasonable application" clauses of § 2254 (d)(1) are different. As the U.S. Supreme Court explained:

> ["]A federal habeas court may issue the writ under the "contrary to" clause if the State Court applies the rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the

2

> "unreasonable application clause" if the state
> court correctly identifies the governing legal
> principle from our decisions but unreasonably
> applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether
> the State Court's application of clearly
> established federal law is objectively
> unreasonable, and we stressed in **Williams v.-
> [Taylor, 529 U.S. 362 (2000)]** that an
> unreasonable application is different from an
> incorrect one.

**Bell v. Cone**, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court
decision in determining whether the law applied to a
particular claim by the state courts was contrary to the
law set forth in the cases of the United States Supreme
Court or whether an unreasonable application of such law
has occurred. **Avila v. Galaza**, 297 F.3d 911, 918 (9th Cir.
2002) **cert**. **dismissed**, 538 U.S. 919 (2003).  Where the state
court fails to give any reasoning whatsoever in support of
the denial of a claim arising under Constitutional or federal
law, the Ninth Circuit has held that [this] court must perform
an independent review of the record to ascertain whether
the state court decision was objectively unreasonable.
**Himes v. Thompson**, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, it is the habeas petitioner's burden to show
he is not precluded from obtaining relief by § 2254 (d).
See **Woodford v. Visciotti**, 537 U.S. 19, 25 (2002).

## II. JURISDICTION

The United States Supreme Court and the lower federal
courts have jurisdiction over federal questions presented
in state law proceedings. **U.S. Const. Art. VI, cl.2** (supremacy
clause.)  In state court criminal cases, the Supreme Court

3

exercises this jurisdiction through its discretion to grant writs of certiorari. (28 U.S.C. § 1254; U.S. Sup. R. 10-16); the lower federal courts have jurisdiction to hear habeas corpus petitions brought by state prisoners. § 2254.

With rarely applicable exceptions, eligibility for federal review of a state court conviction requires the defendant to first seek relief in the state court of last resort--the highest state court in which the defendant is entitled to seek relief. 28 U.S.C. § 1257 (a); U.S. Sup. Ct. R 13.1 (certiorari.); 28 U.S.C. § 2254 (B)(1) (requiring exhaustion of state court remedies by habeas corpus petitioner's.) For defendants convicted of felonies, the court of last resort in the state of California is the California Supreme Court.

Here, in this case, because petitioner has in fact exhausted all available state court remedies so required of him, this court is thus the appropriate court of jurisdiction to hear and entertain this instant petition.

### III. **EXHAUSTION OF REMEDIES**

As noted in Section II supra, petitioner has exhausted the state court remedies as so required of him pursuant to 28 U.S.C. § 2254 (b)(1)(A) in having presented the claims contained herein this instant petition infra to the California Supreme Court which denied relief as noted therein the statement of the case below.

### IV. **STATEMENT OF THE CASE**

By information filed January 22, 2002, petitioner was

4

charged with arson of an inhabited dwelling (**Penal Code (P.C.)**
**§ 451 (b)**)--enhanced by a prior arson conviction (**P.C. § 451.1**
**(a)**) which also qualified as a prior prison term pursuant
to **§ 667.5 (b)**.[1]/ CT 64-65, 119-122.[2]/  Petitioner pleaded
not guilty to the abovesaid charges. CT 67.

Jury trial commenced May 14, 2003, with **in limine** and
**bifurcation** motions primarily directed at a prior conviction
and evidence surrounding a 1999 arson at the same dwelling.
CT 141.  The motion was heard and denied. CT 135-139, RT
8-28.  Subsequently, the cause was submitted to the jury
which returned its verdict finding petitioner guilty as
charged. CT 158.

On July 10, 2003, petitioner was sentenced to the mid-
term of five years for arson (**§ 451 (b)**), plus the midterm
of four years for the prior arson conviction (**§451.1 (a)**),
plus one year for the prior prison term (**§ 667.5 (b)**) for
a total of ten years in state prison with 583 days local
custody credits calculated pursuant to **§ 2933.1**. RT 160,
162-163.  Petitioner filed a timely notice of appeal.[3]/

---

1/. All statutory references are to the Penal Code unless
otherwise noted.

2/. "CT" stands for Clerks Transcripts on Appeal; "RT" stands
for Reporters Transcripts on Appeal.

3/. Due to extraordinary circumstances beyond petitioner's
control as duly explained therein his verified declaration
attached hereto infra, petitioner does not possess the opinions
or dates of the opinions of either of the state courts with
regards to his direct appeal and habeas corpus actions of which
were litigated on his behalf.  Petitioner however, avers that
such opinions exist and the dates thereof will show his having
satisfied the exhaustion requirement.

## V. STATEMENT OF FACTS

On August 1, 2001, at 2:45 p.m., Sargent Cory Quinn
of the Hayward Police Department was dispatched to 26791
Peterman Avenue where smoke was seen rising from the roof.
RT 89.  Upon Quinn's arrival, the fire department was already
at work with a ladder up to the roof. RT 90-91.  Quinn climbed
to the roof where he saw smoke rising from holes that the
fire department had cut to vent the smoke. RT 90.  An attic
crawl space was visible immediately below the holes cut into
the roof.

Quinn looked through one such hole and saw "the defendant
[petitioner] sitting there with his legs crossed....with
a ring of fire around him." RT 91: 18-21.  Petitioner was
six feet away (RT 101) and the fire was a "semi-circle of
about 36 inches." RT 101: 6-9.  According to Quinn, petitioner
"almost definitely" looked at Quinn, but ignored commands
to climb out. RT 93: 2-4.  Quinn stated that he directed
petitioner out of the attic, but petitioner "basically,
flipped me off." RT 93, 14-18.  At the time, petitioner did
not have anything in his hands. RT 101-102.

Quinn next, grabbed a fire hose and doused the circle
of flame. RT 94.  The fire was out in "[l]ess than 10
seconds." RT 103.  With the flames out, Quinn again ordered
petitioner down from the roof, to no avail. RT 94.  At that
point Quinn "dispensed" his pepper spray (RT 94), but achieved
no better result. RT 95.  A second dose of pepper spray
elicited a scream, and petitioner started scrambling on all

6

fours toward Quinn. RT 95. When petitioner came out of the
crawl space onto the roof he was grabbed by Quinn. RT 96.
The subsequent struggle drew assistance from other personnel
on the roof until petitioner was subdued. RT 97.

Petitioner was handcuffed and restrained on a gurney,
then lowered from the roof. RT 97-98. Petitioner was in
a state of agitation all the way down. RT 98.[4/]

Petitioner was treated for burns at St. Rose Hospital.
RT 106-107. He had suffered substantial burns.  RT 132
[medical records]. A "BIC" brand cigarette lighter and
$134 cash was recovered from his person at the hospital.
RT 107, 109.

Inspection of the crawl space fire revealed one point
of origin (RT 115: 11-14, 120: 26-28), a 2 x 4" ceiling
joist over the garage, the same area petitioner was located.
RT 122. Also in the area of the point of origin was some
electrical, "Romex" wiring stapled (plastic fasteners with
metal pins) near the point of origin. RT 117: 9-15.  Fire
Inspector Barry Reed, who was qualified as an expert "as
to causes and origins of fire" (RT 112), inspected the wiring
and opined that the Romex would probably have turned a
"reddish color" if it had been the cause of the fire. RT
118-119.  Reed also rendered an expert opinion that the
"fire started without some type of direct flame contact."

---

4/. Petitioner's son, Justin, testified that petitioner was
handcuffed in a hogtied position" and yelling "Help, help me"
on the way down. RT 171.

7

RT 120: 22-25. Reed opined that the fire could be started with a BIC lighter, and that it would take from one to three minutes to start. RT 121.

Petitioner's son, Justin, who was 15 years old at the time of trial, testified that petitioner lived in the crawl space over the garage. RT 47-48, 56. The space was accessible through a hole in the wall left by electrical repairmen from an earlier fire. RT 60, 66. On the date of the fire, Justin went to the garage to fetch petitioner for dinner, and petitioner said he would be down in a bit. RT 57. At the time of this exchange, petitioner did not appear unusual to Justin. RT 58.

Subsequently, Justin noticed the ceiling fan shake and almost fall down. RT 59. Justin and his sister moved under the skylight to avoid falling debris, and heard footsteps and a yell come from the attic. RT 59-60. Justin went outside where he was able to see smoke coming from vents on the side of the house. RT 61. He saw the smoke within a minute or two after calling for petitioner to come down and eat. RT 62.

At trial, evidence of petitioner's prior conviction for recklessly causing a fire was introduced by judicial notice of the court file. RT 130 [Alameda County No. H272727793]. Additional evidence regarding the facts surrounding petitioner's "no contest" plea in that case was elicited from testimony by the fire marshal who inspected the first fire, and from justin.

8

During the summer of 1999, Justin was living at his
grandmother's at the Peterman address. RT 49. On August 16,
1999, he returned from his other grandmother's (also located
in Hayward) to find petitioner standing in the living room
holding a propane tank and plastic red gas can of which
the tank was emitting flame. RT 51-52.  The living room
couch had a "little flame" on it which petitioner put out
using the gas can. RT 52.  Justin left the house without
saying anything to petitioner. RT 52.

On his way back to his other grandmother's, Justin
noticed fire trucks heading to the Peterman address. RT 54.
He returned to watch the fire trucks. RT 54.  The prosecution
asked Justin: "Did his father ever tell him he didn't start
that first fire?"  Justin replied "No." RT-19-20.

Inspection of the premises after the fire revealed
several places of origin, including a shed 50 feet from the
main residence. RT 77-84.  Robert Arteaga, the fire Marshal
who inspected the August 1999 fire was qualified as an expert
and rendered an opinion that multiple places of origin were
"unlikely to happen for the average fire." RT 78.  It appeared
to Arteaga that an accelerant had been used because the fire-
man who put out the flames said the fire was proned to
spontaneously re-igniting. RT 81.  Arteaga testified that
the couch in the living room burned within fifteen minutes of
the last person leaving the house. RT 86.

Petitioner's mother testified on his behalf at trial. RT
132.  She testified that petitioner was despondent over

9

a failed marriage and often talked to himself in the crawl
space over the garage. RT 132-135. Mrs. Navarro also
testified that the crawl space where petitioner was staying
was unfinished. Electrical repairs after the first fire
took some time because of insurance problems, and the first
electrical contractors had to be replaced. RT 136-137.

On October 1, 2001, just prior to the time of the fire,
everything seemed normal as Mrs. Navarro heard petitioner
ask his son Justin "what is for lunch.?" RT 137. Shortly
afterward, Justin alerted her that smoke was coming out of
the roof vents. RT 138. Mrs. Navarro ran outside the house
and dialed '911.' RT 138. When she ran back into the house
she saw petitioner climbed through the access hole into the
attic. RT 138: 6-9, 139.

Mrs. Navarro went back outside where she was assisted
by a neighbor. RT 138. She watched her son removed from
the roof "wet, burned" and perhaps "unconscious." RT 139.

## VI. GROUNDS FOR RELIEF

Petitioner avers that he is unlawfully restrained of
his liberty by the California Department of Corrections and
Rehabilitation (CDCR), specifically at the Correctional
Training Facility (CTF), located in Soledad, California,
where Ben Curry is Warden therein, pursuant to a conviction(s)
and sentence(s) of which he suffered in the Alameda County
Superior Court under Case No. H31293. Petitioner conjunctly
avers that such conviction(s)/sentence(s) should be set aside
in habeas corpus for the following reasons/grounds:

I. **PETITIONER'S CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL WERE INFRINGED WHEN HIS INITIAL ARRAIGNMENT FOR THE CRIMES OF WHICH HE CURRENTLY STANDS CONVICTED WAS UNREASONABLY DELAYED THEREBY RENDERING THE STATE COURT'S REJECTION OF SUCH CLAIM OBJECTIVELY UNREASONABLE.**

II. **PETITIONER'S CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL WERE INFRINGED WHEN A PRELIMINARY HEARING WAS NOT CONDUCTED WITHIN 10 DAYS OF HIS INITIAL ARRAIGNMENT THEREBY RENDERING THE STATE COURT'S REJECTION OF SUCH CLAIM OBJECTIVELY UNREASONABLE.**

III. **PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO ENSURE THAT PETITIONER'S SPEEDY TRIAL RIGHTS WERE SAFE-GUARDED WITH REGARDS TO ARRAIGNMENT AND PRELIMINARY HEARING PROCEEDINGS.**

IV. **PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING AS TO THE CLAIMS PRESENTED HEREIN THIS INSTANT HABEAS CORPUS PETITION.**

## VII. NO OTHER REMEDY AT LAW

Petitioner has no other plain, speedy, or adquate remedy in the ordinary course of the law to have entertained and heard, the claims contained herein this instant petition.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** petitioner prays for relief as follows:

1. For a writ of habeas corpus to issue directing the Director of the CDCR and petitioner's immediate custodian, to wit, Ben Curry, Warden at CTF, to bring petitioner before the appropriate court of jurisdiction to show then why the conviction(s) of which petitioner currently suffers should not be reversed.

2. For any other relief deemed appropriate and just by this court to be granted just the same, including, but not limited to, this court conducting an evidentiary hearing so as to resolve all mixed questions of law and fact and

11

any other issues that may need resolving via such a hearing.

Executed on this _15_ day of _February_ , 2008.

By: _Manuel M. Navarro_
Manuel M. Navarro
CDCR #P-94139   TD-6L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

12

MANUEL M. NAVARRO
CDCR #P-94139   TD-6L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL M. NAVARRO,           ) | Case No._____ |
|                ) | |
|      Petitioner,   ) | MEMORANDUM OF POINTS AND |
|                ) | AUTHORITIES IN SUPPORT OF |
| -vs-                         ) | PETITION FOR WRIT OF HABEAS |
|                ) | CORPUS |
| BEN CURRY, WARDEN,           ) | |
|                ) | |
|      Respondent.   ) | |
|                ) | |
| _____) | |

### GROUND I-A.

**PETITIONER'S CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL
WERE INFRINGED WHEN HIS INITIAL ARRAIGNMENT FOR THE
CRIMES OF WHICH HE CURRENTLY STANDS CONVICTED WAS
UNREASONABLY DELAYED THEREBY RENDERING THE STATE
COURT'S REJECTION OF SUCH CLAIM OBJECTIVELY
UNREASONABLE.**

Despite petitioner not having in his possession, either

of the state court reasoned opinions in this case denying

his overall claims contained herein--see petitioner's

verified declaration attached hereto infra as Exhibit (Exh.)

A--he nonetheless avers that such decisions by the state

court(s), as discussed more fully below, were based on an

unreasonable application of clearly established federal

law.

### I-B. Petitioner Enjoyed A Constitutional Right To Be Arraigned Within 48 Hours Of His Arrest.

Save for extraordinary circumstances explained more

fully post, petitioner, at the time of his arrest in this

case, enjoyed a constitutional right under both, state and federal standards to be arraigned within 48 hours of his arrest.

Under federal constitutional standards, the U.S. Supreme Court in **Gerstein v. Pugh**, **420 U.S. 103 (1975)**, held that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention.

Clarifying the "prompt" clause noted in **Gerstein** in a later decision as that of **County of Riverside v. McLaughlin**, **500 U.S. 44 (1991)**, the U.S. Supreme Court established that "prompt" generally means within 48 hours of the warrantless arrest; absent extraordinary circumstances, a longer delay violates the Fourth Amendment. Also see **Powell v. Nevada**, **511 U.S. 80 (1994)** (the same.)

Similarly, under (California) state standards, P.C. § 825 requires that an arraignment be held within 48 hours of ["]defendant's" arrest, excluding Sundays and Holidays. See **P.C. § 825 et seq.**; **People v. Turner**, **32 Cal. Rptr.2d 782 (1994)**.

Accordingly, based on the above, petitioner enjoyed a constitutional right to be arraigned within 48 hours of his arrest.

**I-C. Petitioner's Arraignment Was Unreasonably Delayed.**

["]In evaluating whether the delay [of arraignment] in a particular case is unreasonable...., the courts must allow

2

a substantial degree of flexibility." **County of Riverside v. McLaughlin, supra** at p. **1670.** Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities. **Ibid.** [However], a probable cause determination in a particular case does not pass constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate **Gerstein** if the individual can prove that his or her probable cause determination was unreasonably delayed. **Ibid.**

Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. **County of Riverside v. McLaughlin, supra** at p. **1670.**

In this instant case, the record reflects that petitioner was arrested on August 1, 2001, but not arraigned until August 8, 2001--approximately seven (7) days later. Petitioner avers that such delay in arraignment was unreasonable and unsupported by extraordinary circumstances.

For example, despite petitioner having been initially hospitalized on the day of his arrest to undergo minor surgery, there exists no evidence of credible worth to suggest that petitioner's injuries were grave enough to warrant a

3

delay in arraigning him.  Put another way, there exist no
evidence to infer that petitioner's health would have been
jeopardized by way of arraigning him in a timely manner.
Save for the issue of petitioner's hospitalization, there
simply is no other conceivable extraordinary circumstance
of which the state courts could/can rely upon to justify
a 7 day delay in arraigning petitioner.

Finally, but more notably, where an arrested individual
does not receive a probable cause determination within 48
hours, the calculus changes. **County of Riverside v.**
**McLaughlin**, **supra** at p. **1670.**  In such a case, the arrested
individual does not bear the burden of proving an unreasonable
delay.  Rather, the burden shifts to the government to
demonstrate the existence of a bonafide emergency or other
extraordinary circumstance. **Ibid**.  The fact that in a
particular case it may take longer than 48 hours to
consolidate pretrial proceedings does not qualify as an
extraordinary circumstance.  Nor, for that matter, do
intervening weekends. **Ibid.**

In this case, the record fails to reflect any emergency
or viable extraordinary circumstance that would validate
the 7 day delay in arraigning petitioner.  Being so, any
contrary reasoning must fail.

4

### GROUND II-A.

**PETITIONER'S CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL WERE INFRINGED WHEN A PRELIMINARY HEARING WAS NOT CONDUCTED WITHIN 10 DAYS OF HIS INITIAL ARRAIGNMENT THEREBY RENDERING THE STATE COURT'S REJECTION OF SUCH CLAIM OBJECTIVELY UNREASONABLE.**

Similarly, as with Ground I supra, despite petitioner lacking possession of either of the state court's reasoned opinions in this case, petitioner nonetheless avers that the state court's rejection of the above captioned claim was, as discussed more fully below, based on an unreasonable application of clearly established federal law.

### II-B. Petitioner Possessed A Constitutional Right To A Speedy Trial.

The Sixth Amendment to the federal constitution, as applied to the states through the due process clause of the Fourteenth Amendment guarantees a criminal defendant the "right to a speedy and public trial." See **Barker v.-Wingo**, 407 U.S. 514-515 (1972) (quoting **Klopfer v. North-Carolina**, 386 U.S. 213 (1967).)

Similarly, **Article I-15** of the California Constitution guarantees an accused the "right to a speedy and public trial."

Finally, the Sixth Amendment right to a speedy trial attaches with the filing of the accusatory pleading or the arrest, whichever comes first. **People v. Alvarado**, 72 Cal. Rptr.2d 209, 211 (1997) (quoting **Serna v. Superior Court**, 219 Cal. Rptr. 420 (1985).)

In this case, petitioner unequivocally asserted the abovesaid right. Petitioner's Declaration at Exh. A hereto.

## II-C. The Delay In Conducting Petitioner's Preliminary Hearing Was A Prejudicial Infringement Thereupon His Speedy Trial Rights.

To prevail on a Sixth Amendment speedy trial claim, a defendant must demonstrate actual prejudice unless, "'the first three **Barker** factors weighed heavily against the government.....' [Citations.]" **People v. Alvarado, supra** at p. **211.**

Pursuant to **Barker, supra** at pp. **514, 530,** the presumptively prejudicial length of delay operates as a "triggering mechanism" which necessitates inquiry into other factors. All of the factors must be balanced in order to determine whether or not there was a violation of [a] defendant's federal rights to a speedy trial. In addition to the length of the delay, the other factors which must be weighed....are: (1) the reason for the delay; (2) the defendant's assertion of his right to a speedy trial; and (3) actual prejudice to the defendant. **Ibid.** The foregoing factors are related and must be considered together with such other circumstances as may be relevant. **Id.** at p. **533.**

Particularly with regards to the prejudice factor, the **Barker** Court pointed out that: ["]Prejudice, of course, should be assessed in light of the interests of the defendants which the speedy trial right was designed to protect." **Barker, supra** at p. **533.** This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and

6

(iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown. **Ibid**.

Here, in this case, petitioner avers that all of the prejudice factors of which the **Barker** Court outlined were experienced by him. For example, having unequivocally asserted his speedy trial rights, petitioner's interest to prevent oppressive pretrial incarceration was in fact, overpowered by oppressive pretrial incarceration in that credulity need not be strained to realize that the amount of pretrial incarceration of which petitioner endured was manifestly oppressive. Moreover, petitioner's interest in minimizing anxiety and concern was equally overpowered by the very fact of the abovesaid oppressive pretrial incarceration and all of the adverse attributes that were/are conjoined therewith.

Furthermore, petitioner's defense was effectively impaired in that the record evidence in this case--albeit petitioner lacks possession of the bulk of such records (petitioner's verified declaration at Exh. A hereto)--is replete with instances of various (defense) witnesses being

unable to recall accurately, events of the distant past.
Even if the record does not show such witness memory loss,
such by no means negates petitioner's instant stance. ["]Loss
of memory, however, is not always reflected in the record
because what has been forgotten can rarely be shown." **Barker**,
**supra** at p. 533.

Given the above, great effort is not required to realize
that petitioner suffered  prejudice with regards to this
instant claim.  Being so, any contrary reasoning should be
rejected.

### GROUND III-A.

**PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL
COUNSEL WHEN COUNSEL FAILED TO ENSURE THAT PETITIONER'S
SPEEDY TRIAL RIGHTS WERE SAFE-GUARDED WITH REGARDS TO
ARRAIGNMENT AND PRELIMINARY HEARING PROCEEDINGS.**

The state court's rejection of petitioner's Ineffective
Assistance of [Trial] Counsel (IAC) claims, as discussed
more fully below, was based on an unreasonable application
of clearly establish federal law.

To establish IAC, a convicted defendant must show: (1)
that his counsel's performance was deficient and fell below
an objective standard of reasonableness under prevailing
norms; and (2) that the deficient performance prejudiced
the defense, i.e., that there is a reasonable probability
that, but for counsel's unprofessional performance, the result
of the proceeding would have been different. See **Strickland
v. Washington**, 466 U.S. 688 (1984).  Moreover, the Court
in **Strickland** explained that counsel's responsibilities
incident to ensuring a fair trial include "the overreaching

duty to advocate the defendant's cause and the more particular
duties to consult with the defendant on important decisions
and to keep the defendant informed of the important
developments of the prosecution."

In this case, trial counsel's performance was both
deficient and prejudicial.

For example, incorporating Grounds I and II supra by
reference as if rewritten herein, by the very fact that
petitioner unequivocally asserted his speedy trial rights
placed upon trial counsel, the duty to ensure that such
right(s) were secured. Moreover, despite counsel being the
"captain of the ship," the record fails to reflect any
extraordinary strategic circumstances of which trial counsel
could/can rely upon to date, that would justify the disregard
for petitioner's asserted speedy trial rights. Being so,
it is apparent that counsel's failure to ensure that
petitioner's speedy trial rights were secured was deficient
performance.

As to prejudice, petitioner has demonstrated cogently
and colorably herein ante that the deprivation of his speedy
trial rights was prejudicial, hence rendering trial counsel's
performance as alleged herein to be prejudicial just the
same. As such, any contrary reasoning must fail.

### GROUND IV-A.

**PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING AS TO
THE CLAIMS PRESENTED HEREIN THIS INSTANT HABEAS CORPUS
PETITION.**

A federal habeas corpus petitioner is entitled to an

9

evidentiary hearing where the petitioner establishes a
"colorable" claim for relief and where the petitioner has
never been accorded a state or federal hearing on his
claim[s]. See **Earp v. Oronski**, **431 F.3d 1158, 1167 (9th Cir.
2005)** (citing **Townsend v. Sain**, **372 U.S. 293 (1963)**; **Keeney-
v. Tamayo-Reyes**, **504 U.S. 1, 5 (1992)**.)  In showing a
colorable claim, a petitioner is "required to allege specific
facts, which, if true, would entitle him to relief." **Ortiz
v. Stewart**, **149 F.3d 923, 934 (9th Cir. 1988)**.  Moreover,
despite the fact that under **AEDPA**, if a petitioner fails
to develop in state court the factual basis for a claim,
hence being then restricted in his ability to do so in federal
court (see **28 U.S.C. § 2254 (e)(2)**), such restriction(s)
do not apply if a petitioner exercised due diligence in state
court and attempted to develop the factual basis of his claim.
As the Supreme Court has explained, "a failure to develop
the factual basis of a claim is not established unless there
is a lack of diligence, or some greater fault, attributable
to the prisoner or the prisoner's counsel." **Williams v.
Taylor**, **529 U.S. 420, 432 (2000)**.  The [High] Court further
noted that "[d]iligence will require in the usual case, that
the prisoner, at minimum, seek an evidentiary hearing in
state court in the manner prescribed by law." **Id**. at p. 437.
Additionally, to be clear, the court in **Townsend**, at p.
**313**, established that a defendant is entitled to an
evidentiary hearing if he can show that:

> (1) the merits of the factual dispute were not
> resolved in the state hearing; (2) the state

factual determination is not fairly supported
by the record as a whole; (3) the factfinding
procedure employed by the state court was not
adequate to afford a full and fair hearing;
(4) there is a substantial allegation of newly
discovered evidence; (5) the material facts
were not adequately developed at the state
court hearing; or (6) for any reason it appears
that the state trier of fact did not afford the
habeas applicant a full and fair hearing. **Ibid**.

If the defendant can establish either of the abovesaid

circumstances, then the state court's decision was based

on an unreasonable determination of the facts and the habeas

(federal) court can independently review the merits of that

decision by conducting an evidentiary hearing. See **Taylor**

**v. Maddox**, **366 F.3d 992, 1001 (9th Cir. 2004)** ("if, for

example, a state court makes evidentiary findings without

holding a hearing giving the petitioner an opportunity to

present evidence, such findings clearly result in an

'unreasonable determination' of the facts.")

In this case, incorporating Grounds I-III supra by

reference as if rewritten herein, petitioner has clearly

set forth colorable claims for relief, i.e., allegations

of specific fact, which if true, would entitle him to relief.

Moreover, petitioner has done all within the ambit of his

power to develop the factual basis for his claims.

Particularly, petitioner has proffered the state court(s)

the factual basis for both, his IAC claims and his claims

of speedy trial error. Petitioner likwise, avers that due

to the latter, it was incumbent upon the state court(s) to

conduct an evidentiary hearing as to his claims presented

herein.

Furthermore, petitioner avers that as to his overall claims presented herein, the bulk of the **Townsend** prongs apply to the particular facts and circumstances of his case, thereby rendering the state court's failure to conduct an evidentiary hearing as that of an unreasonable determination of the facts.

Finally, because petitioner's claims presented herein present mixed questions of law and fact--namely with regards to his IAC claims--and because to date, there has never been an evidentiary hearing held to resolve such mixed questions of law and fact, the presumption of correctness clause cannot safely lie in this case. See **Seidal v. Merkle**, **146 F.3d (9th Cir. 1998); 28 U.S.C. § 2254 (e)(2).**

Accordingly and in sum, the state court's failure to conduct an evidentiary hearing as requested by petitioner was objectively unreasonable thereby warranting both, any contrary reasoning to be rejected, and for this court to conduct an evidentiary hearing.

12

## CONCLUSION

For all of the foregoing reasons stated herein and those stated therein petitioner's verified declaration infra, the sought for relief formally prayed for supra should be granted at this time.

Respectfully submitted,

By: *Manuel M. Navarro*
Manuel M. Navarro
CDCR #P-94139  TD-6L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705


## VERIFICATION

I, **Manuel M. Navarro**, hereby declare and affirm under penalty of perjury that all of the foregoing is true and correct, and that I am a party to this instant action, to wit, the petitioner.

Executed on this *15* day of *February*   , 2008.

By: *Manuel M. Navarro*
Manuel M. Navarro
CDCR #P-94139  TD-6L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

13

**E X H I B I T    "A"**

**MANUEL M. NAVARRO**
CDCR #P-94139  TD-6L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MANUEL M. NAVARRO,** ) | Case No._____ |
| ) | |
| **Petitioner,** ) | **VERIFIED DECLARATION OF** |
| ) | **MANUEL M. NAVARRO, PETITIONER** |
| **-vs-** ) | |
| ) | |
| **BEN CURRY, WARDEN,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |
| _____ ) | |

I, **Manuel M. Navarro**, hereby declare and affirm under penalty of perjury and the laws of the state of California and the United States of America as follows:

1. I am a citizen of the United States of America and a resident of the state of California currently incarcerated in a California State Prison, to wit, the Correctional Training Facility (CTF), located in Soledad, California, in the County of Monterey. I am over the age of 18 years and competent to testify as follows:

3. Since the litigation of my direct appeal in this case and all other collateral (habeas corpus) actions, I have experienced the loss of the near entirety of my record transcripts in this case--inclusive of all responding court opinions with regards to my direct appeal.

4. Specifically, due to various institutional cell searches in conjunction with my having entrusted several

fellow ("jailhouse lawyer") prisoners, the majority of my legal documents have been misplaced/lost.

5. Through inadvertence, and possibly purposely, following various random searches of my cell, a good part of my legal papers, among other personal items, have come up missing whereupon my inquiry as to their location, I have been met with fruitless results.

6. Moreover, at least one fellow prisoner of whom I entrusted to assist me with my legal endeavors, hence, entrusting him to physically possess a large portion of my legal documents, has transferred with such documents wherewhich due to my not knowing his "full name" and CDCR prison number, I am unable to locate him in that I am unaware as to the exact prison in which he transferred to.

7. I have since written to the Alameda County Superior Court in an effort to retrieve free of cost--due to my indigency--those documents of which I have lost, yet to date, I have not received a response.

8. I have also written to both the appellate and (California) supreme court in an effort to obtain all responsive opinions with regards to my direct appeal and habeas corpus litigations--all of which to date, I have not received a response.

9. I, **Manuel M. Navarro**, hereby declare and affirm on this _15_ day of _February_, 2008, that all of the foregoing is true and correct.

_Manuel M. Navarro_
Manuel M. Navarro
**D E C L A R A N T/Petitioner**

2

1                        DECLARATION OF SERVICE BY MAIL

2

3  CASE NAME: Navarro v. Curry  (Habeas Corpus)

4  CASE NO. :   U/A

5

6  I, Manuel M. Navarro    , declare that I am over the age of eight-

7  teen (18) years; I am / am not a party to the attached action; I served

8  the attached document entitled:   PETITION FOR WRIT OF HABEAS
                                CORPUS/ATTACHED DECLARATION
9                              OF MANUEL M. NAVARRO

10

11  on the persons/parties specified below by placing a true copy of said

12  document into a sealed envelope with the appropriate postage affixed

13  thereto and surrendering said envelope(s) to the staff of the Correction-

14  al Training Facility entrusted with the logging and mailing of inmate

15  legal mail addressed as follows:

16  UNITED STATES DISTRICT COURT
17  NOERTHERN DISTRICT OF CALIFORNIA
    280 SOUTH FIRST STREET, ROOM 2112
18  SAN JOSE, CALIF. 95113-3095

19  OFFICE OF THE ATTORNEY GENERAL
    OF THE STATE OF CALIFORNIA
20  455 GOLDEN GATE AVENUE
    SAN FRANCISCO, CALIF. 94102-7004

21

22    There is First Class mail delivery service by the United States Post

23  Office between the place of mailing and the addresses indicated above.

24  I declare under the penalty of perjury under the laws of the United

25  States and the State of California that the foregoing is true and correct,

26  and that I executed this service this _15_ day of _February_,

27  _2008_, in Soledad, CA.

28                          Manuel M. Navarro
                          Declarant



CARL A. VAUGHAN, CDCR #D-81763
C.T.F. CENTRAL FACILITY, CW-128U
P.O. BOX 689
SOLEDAD, CALIF. 93960-0689

UNITED STATES POSTAGE
$ 04.90°
MAILED FROM ZIP CODE 93960

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
280 SOUTH FIRST STREET, ROOM 2112
SAN JOSE, CALIF. 95113-3095
ATTN: CLERK OF THE COURT