IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL M. NAVARRO, | No. C 08-0241 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden, | |
| Respondent. | |

## INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. The original petition was dismissed with leave to amend, and petitioner filed a timely amended petition. Respondent was ordered to show cause why the writ should not be granted based on the three claims in the amended petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2003, a jury in Alameda County Superior Court convicted petitioner of arson (Cal. Pen. Code § 451(b)), and found true the special circumstance that petitioner had been previously convicted of recklessly causing a fire (Cal. Pen. Code § 452(c)) in 2000. Petitioner's sentence for the 2003 conviction was enhanced because he had failed to avoid a felony conviction in the five years subsequent to the 2000 reckless burning conviction (Cal. Pen. Code § 667.5). The trial court sentenced petitioner to an aggregate prison term of 10 years in state prison.

On October 25, 2004, the California Court of Appeal affirmed the conviction and sentence (Ex. 2). The California Supreme Court denied petitioner's petition for review on January 12, 2005 (Ex. 4). Petitioner then proceeded to file three separate petitions for a writ of habeas corpus with the California Supreme Court. The California Supreme Court denied the first two petitions on August 30, 2006, and then denied the third petition on May 14, 2008 (Exs. 5-10). Petitioner filed the instant federal habeas petition on February 28, 2008. The claims raised in this instant petition were raised by petitioner in his third habeas petition to the California Supreme Court. (Ex. 9).

The following description of the evidence presented at trial is from the opinion of the California Court of Appeal (Ex. 2 at 2-4). On August 1, 2001, Navarro was at his mother's residence in Hayward, California. At the time of the fire, both Navarro's mother and children were in the residence with Navarro. While in the kitchen, Navarro's children heard Navarro walking around in the attic talking to himself. Because the attic was located above the kitchen, and the children feared that the kitchen ceiling would collapse, the children went outside. At that point, they saw smoke emanating from the vents in the attic and proceeded to call 911. Firefighters arrived at the residence and cut holes into the roof in order to vent the area of the fire. Shortly after the firefighters arrived on the roof, Officer Quinn, of the Hayward Police Department, joined the firefighters on the roof. Officer Quinn looked into the attic through one of the holes and observed Navarro sitting with his legs crossed while looking at the fire, which burned about ten inches in front of him. Navarro ignored Officer Quinn's attempts to order Navarro to come out of the attic, and instead gestured at the officer with his middle finger. As Navarro continued to sit and gaze at the fire, Navarro had to be forcibly removed from the attic.

After being removed from the attic, Navarro was restrained and transported to a local hospital where he received treatment for smoke inhalation and burns. In addition, he received treatment for a laceration in his leg caused by a glass pipe, used for smoking methamphetamine, which Navarro had secreted in his rectum. At the hospital, authorities recovered his clothing and discovered a plastic cigarette lighter in his pants.

At trial, Barry Reed, the arson investigator, concluded that the fire was intentionally

started by the application of flame to the wooden support beam located in front of the spot where Navarro was sitting when Officer Quinn found him. Reed also determined that the type of plastic lighter found in Navarro's pants would have been capable of igniting the wooden support beam if the flame had been applied continuously for two or three minutes.

## ANALYSIS

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing

evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

### B.   ISSUES PRESENTED

As grounds for federal habeas relief, petitioner asserts that: (1) his constitutional right to a speedy trial was violated when his initial arraignment did not occur within forty-eight hours after his arrest; and (2) his constitutional right to a speedy trial was violated when his preliminary hearing was not conducted within 10 days of his initial arraignment; and (3) his constitutional right to effective assistance of trial counsel was violated when his attorney failed to protect Navarro's right to a speedy trial.

#### 1.   Fourth Amendment

Petitioner claims that the delay in his receiving an arraignment violated his Fourth Amendment rights. The Fourth Amendment's protection against unreasonable seizures generally requires a "prompt" judicial determination of probable cause following an arrest. *See Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). Absent extraordinary circumstances, the probable cause determination generally should be made within forty-eight hours of the arrest. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Here, petitioner was arrested on August 1, 2001, but his arraignment did not occur until several days later, on August 8, 2001. In the interim, petitioner was being treated in the hospital for severe burns.

Because this claim arises from the Fourth Amendment, it is barred from federal habeas review. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

4

obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482. A claim that an arraignment was excessively delayed cannot be heard in a federal habeas corpus proceeding because the claim arises from the Fourth Amendment. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 551-52 (7th Cir. 2008) (citing *Stone*); *see also Anderson v. Calderon*, 232 F.3d 1053, 1068 (9th Cir. 2000), *abrogated on other grounds by Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002) (same).

The Ninth Circuit has permitted arraignment-delay claims under the Fourth Amendment to proceed in a federal habeas action only when the petitioner did not have an opportunity to fully and fairly litigate his claim after the forty-eight hour rule was clarified in *McLaughlin*. *See, e.g., Anderson*, 232 F.3d at 1068. However, this exception does not apply to petitioner's case. As his trial occurred twelve years after *McLaughlin*, he had the opportunity at both his trial and his appeal to address his Fourth Amendment claim. Accordingly, petitioner's claim that his arraignment was delayed in violation of the Fourth Amendment is barred from federal habeas review.

**2.    Speedy Trial**

Petitioner claims that his right to a speedy trial under the Sixth Amendment was violated when the state did not provide petitioner with a preliminary hearing within ten days of the initial arraignment.

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). No per se rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible "functional analysis," *Barker v. Wingo*, 407 U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992). None of the four factors are either a necessary or sufficient condition for finding a speedy trial deprivation. *Barker*, 407 U.S. at 533. They are related factors and must be considered together with such other

circumstances as may be relevant. *Ibid.*

### a. First *Barker* Factor: Length of Delay

The length of the delay is to some extent a triggering mechanism for the speedy trial analysis. Unless the length of delay is long enough to be considered "presumptively prejudicial," there is no necessity for inquiry into the other factors. *Doggett*, 505 U.S. at 651-52.

When using the first *Barker* factor to analyze a speedy trial claim, the Supreme Court acknowledged that lower courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year. *Doggett*, 505 U.S. at 652 n.1. In its further analysis of the first *Barker* factor, the Ninth Circuit has determined that a six-month delay, though "not very long", is a "borderline case" sufficient to trigger an inquiry into the remaining three *Barker* factors. *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986); *see also United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976). Conversely, the Ninth Circuit has also determined that a four month delay is insufficient for a Sixth Amendment violation. *United States v. Turner*, 926 F.2d 883, 889 (9th Cir. 1991).

In the instant case, petitioner experienced a five-month delay between his initial arraignment on August 8, 2001, and his preliminary hearing on January 9, 2002. This delay is short of what the Ninth Circuit has described as the borderline for presuming prejudice (six months), though it is slightly longer than what has been found insufficient to presume prejudice (four months). Even if prejudice were to be presumed and the remaining *Barker* factors analyzed, such analysis would further establish that petitioner's right to a speedy trial was not violated. Where the Ninth Circuit has presumed delays of 22, 17, and 20 months were prejudicial, it nevertheless has found such delays not excessively long nor weighed them heavily in favor of the defendant in conducting the full *Barker* analysis. *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003); *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993). By this measure, the five-month delay, even if presumed prejudicial, is certainly not excessive and does not weigh heavily in favor of petitioner's claim.

### b. Second *Barker* Factor: Reason for Delay

The second factor under *Barker* is "whether the government or the criminal defendant is

6

more to blame" for the delay. *Doggett*, 505 U.S. at 651. Deliberate delay by the government "'to hamper the defense' weighs heavily against the prosecution." *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009) (quoting *Barker*, 407 U.S. at 531). Petitioner has not alleged any wrongdoing on the part of the state, either intentional or negligent. In fact, the record does not suggest any specific reason for why his trial was delayed. Without any particularized claim of wrongdoing by the state as causing the delay, this *Barker* factor cannot be weighed in petitioner's favor.

### c. Third *Barker* Factor: Assertion of the Right to a Speedy Trial

A finding that a defendant repeatedly asserted his speedy trial right is entitled to strong evidentiary weight under *Barker*. *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532. The record has no evidence of petitioner ever asserting his Sixth Amendment right to a speedy trial before his trial, during his appeal, or in his first two petitions to the California Supreme Court for a writ of habeas. Petitioner first asserted his right to a speedy trial in his final petition to the California Supreme Court for a writ of habeas, filed on November 28, 2007 (Ex. 9). Without evidence in the record of petitioner asserting his right to a speedy trial earlier, this third *Barker* factor weighs against petitioner.

### d. Fourth *Barker* Factor: Demonstrating Prejudice

Where the delay does not far exceed the minimum time required to trigger the full *Barker* inquiry, the amount of delay in relation to particularized prejudice to the defendant must be considered. *Gregory*, 322 F.3d at 1163. Because the delay in this case only, if at all, scarcely exceeds the minimum time required to trigger the full *Barker* review, petitioner must show the particularized prejudice that resulted from the trial delay and how it harmed the petitioner's chances in trial.

Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Ibid*. Petitioner has not alleged that the five-month delay had caused any of his specific witnesses or

potential witnesses to forget important facts.  Furthermore, petitioner does not argue that any witness became unavailable, or that any potential evidence was destroyed.  Additionally, petitioner's claim that the delay was prejudicial is considerably undermined by his own conduct in delaying the trial by failing to appear on April 1, 2003 (Ex. 11).  Though this failure to appear occurred after his preliminary hearing, and thus after the challenged delay, it still reflects on the amount of prejudice petitioner actually believed he would suffer by a delay in the trial.  Because there is no particularized evidence of prejudice caused by the delay, this fourth *Barker* factor weighs against petitioner.

Even if all the *Barker* factors are considered, they do not support petitioner's claim that his Sixth Amendment speedy trial right was violated.  Consequently, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

**3.     Ineffective Assistance of Counsel.**

Lastly, petitioner claims that he received ineffective assistance of trial counsel when his counsel did not adequately pursue the asserted Fourth and Sixth Amendment violations discussed above.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Ibid*.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689.

**a.     Fourth Amendment Claim**

To prevail on this claim, petitioner will need to show that (1) it was not objectively reasonable under prevailing professional norms for petitioner's counsel to not raise the Fourth

8

Amendment claim arising out of the delayed arraignment, *id.* at 687-88, and (2) that there is a reasonable probability that doing so would have resulted in a non-guilty verdict. *Id*. at 694. Because petitioner cannot successfully show both of these requirements, this claim fails.

On August 1, 2001, petitioner was transported directly from the scene of the fire to the hospital (Ex. 2 at 2). He was treated for smoke inhalation and burns, with burn marks on his face (Ex. 7, part 2). After spending two days at St. Rose Hospital in Hayward, California, petitioner was discharged to jail at 8:31 PM on August 3, 2001 (*ibid*.). Petitioner was then arraigned on August 8, 2001.

The extenuating circumstances of the aftermath from the hospital stay may have justified the decision made by petitioner's counsel not to assert a Fourth Amendment violation based on pre-arraignment delay. Additionally, when a defendant's probable cause determination is delayed more than forty-eight hours, *see McLaughlin*, 500 U.S. at 56 (1991), the Supreme Court has not ruled on what the appropriate remedy would be. *Powell v. Nevada*, 511 U.S. 79, 84-85 (1994). The Ninth Circuit has determined that the appropriate remedy for a pre-arraignment delay in violation of the Fourth Amendment is the exclusion of the evidence in question – if it was the "fruit of the poisonous tree". *Anderson*, 232 F.3d at 1071. Here, there is no indication in the record of any evidence that was obtained by the state as a result of the alleged pre-arraignment delay, rendering the available remedy useless. As there was no evidence to suppress, it was reasonable for petitioner's trial counsel not to pursue the Fourth Amendment claim.

Even if trial counsel's decision were unreasonable, moreover, it was not reasonably probable that petitioner's trial outcome would have turned out differently had counsel pursued a Fourth Amendment claim. Since the record does not suggest that any of the evidence relied on by the jury came from this pre-arraignment delay, petitioner's trial counsel could not have suppressed anything that led to the eventual guilty verdict. There is nothing to suggest that the jury would not have ultimately relied on the same evidence and reached the same verdict. Consequently, petitioner was not prejudiced by trial counsel's failure to pursue a Fourth Amendment claim based upon the pre-arraignment delay.

### b. Sixth Amendment Claim

For the reasons discussed above, petitioner's speedy trial claim has no merit. Counsel's decision not to pursue an argument unlikely to win cannot be considered unreasonable or prejudicial.

Consequently, the state court's denial of petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of federal law.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. An evidentiary hearing is not necessary for the resolution of petitioner's claims. Consequently, his request for such a hearing is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment close the file.

**IT IS SO ORDERED.**

Dated: October  14 , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\NAVARRO0241.RUL.wpd